JILDA PARADISE, Respondent, *v.* RHINELANDER THEATRES, INC., Appellant.

First Department, June 10, 1938.

*Daniel Mungall* of counsel [*Edwin C. Markel* with him on the brief], for the appellant.

*Harry G. Anderson* of counsel [*Murray Brensilber* with him on the brief; *Broder & Brensilber*, attorneys], for the respondent.

GLENNON, J. Plaintiff, together with her partner, entered into a contract with the defendant to give dancing performances for a period of three days commencing on Sunday, March 11, 1934, at the Monroe Theatre, in the borough of Manhattan. The arrangement called for three appearances daily.

The theatre, in the main, was operated by the defendant for the purpose of exhibiting motion pictures. In conjunction therewith a few vaudeville acts were presented. The place set aside for the

performers lay between the front of the stage and the screen, which was about fifteen feet in the rear.· There were footlights located six inches apart, which were used for the purpose of throwing light on the stage, and in addition there was a spotlight.

The stage proper consisted of a double floor. The bottom was made of cypress and the top of yellow pine. The theatre was erected in 1926.

The plaintiff and her partner, Robert McDonald, arrived at the theatre about eleven A. M. on Sunday, March eleventh. While waiting to rehearse plaintiff said that she walked over the stage and noticed that it was of soft wood and·slightly uneven. At that time there was only a dim work-light in the back of the theatre. However, during the day they gave three performances when the theatre was fully lighted. She noticed again that the floor was of soft wood and uneven. In answer to the question, " You observed it? " she answered, " I didn't observe it with a microscope, but I felt it." On the following day during the first performance plaintiff fell and was injured. In describing the happening she stated, " Well, I went through my routine, and when I got to about the third step my foot caught in a groove and threw me right on my face."

How deep the so-called groove was or how long it had existed does not appear. The only other places in the record where the groove was referred to by plaintiff was on her cross-examination. She was asked, " So, you were turning, weren't you? " Her answer was, " No. The force of the trip that my foot got caught in this panel, or whatever it is — groove — that caused me to slip, as it were, backwards. It was the force of the fall." And again in answer to a question, designed to test her credibility, she stated that she remembered distinctly that her foot was caught in a groove.

Robert McDonald said that on March eleventh, " I went upon the stage and walked across it, and noticed that it was on soft material, but paid no particular attention to it because I danced on plenty of soft stages, and therefore didn't pay particular attention to that one. So then I left the stage." At the time plaintiff fell, McDonald was making a change.

One Mohammed Ackabaz, an acrobat, said that he spoke to an unidentified man who was apparently connected with the theatre. " Well, naturally, I believe I took the man, and I show him the stage that it was so rough for my hand, and I show him my hands that it was full up with splinters."

One Alfred Livsey, an orchestra leader, described the accident as follows: " In the middle of the dance or some part of the dance I saw her take a terrific fall and go down like a corkscrew, right on her face. If you would call a pirouette a corkscrew, that is what I would call it, using the vernacular of the stage."

Billy Howard, a theatrical performer, who was also called by the plaintiff, said that he could not identify the photographs of the stage because " I never looked at the stage."

Defendant called as a witness William Saklin, who said that he was the owner of the theatre. He denied that there were any defects in the stage floor. Other witnesses who appeared on behalf of the defendant substantiated the claim made by Salkin as to the condition of the stage.

There are several reasons why this verdict should not be permitted to stand. We will mention two, which we deem to be controlling. In the first place, the defect, if any, was so trivial that it was not observable by the naked eye. Secondly, there was no notice, either actual or constructive, of a condition which was described by plaintiff as a " groove " in the floor of the stage. The plaintiff and her partner apparently had not seen this so-called " groove " during the day immediately preceding the accident. It would be well nigh impossible for defendant to have discovered it without the aid of a " microscope."

We cannot find in this record any evidence of negligence on the part of defendant, and, therefore, the judgment should be reversed, with costs, and the complaint dismissed, with costs.

MARTIN, P. J., O'MALLEY, UNTERMYER and DORE, JJ., concur.

Judgment unanimously reversed, with costs, and the complaint dismissed, with costs.